1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   BRANDON R. FLEEMAN,                    No. CIV S-06-0652-FCD-CMK-P

12              Petitioner,

13        vs.                               FINDINGS AND RECOMMENDATIONS

14   ROY CASTRO, Warden,

15              Respondent.

16   _____/

17              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are petitioner's petition

19   for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 14), and petitioner's reply (Doc.

20   16).

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

1

# I. BACKGROUND

A.    **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> On December 2, 2000, the victim and aunt [who are husband and wife] lived in a duplex in Carmichael. Defendant, then age 24, is the aunt's nephew. After talking to aunt on the telephone in the evening of December 2, defendant went to their home.
>
> At trial, aunt claimed for the first time that she was drinking that evening and that both she and the victim had used methamphetamine. As the victim told a deputy sheriff that evening, defendant was in their driveway, calling from a cell phone. As aunt also explained to the deputy sheriffs, defendant, who was then homeless, arrived at their home with suitcases and duffel bags, which he wanted to store. Aunt believed the bags contained stolen property and refused to accept them. Aunt and defendant began to argue. The victim tried to calm down defendant. The victim told a deputy sheriff that he suspected defendant had a weapon behind his back. Aunt told the deputy sheriffs she saw defendant turn around and put one hand into his waistband. The victim then stepped between aunt and defendant, pushing aunt inside and shutting the door. Aunt heard a gunshot. The victim told the deputy sheriff that he followed aunt into the house. As he closed the door, he felt a burning sensation in his left foot, although he never saw a gun. He did not realize that a bullet had entered his foot until he took off his shoes and socks when the deputy sheriffs arrived and made him remove them. The victim was initially evasive with the deputy sheriffs because he was on parole.
>
> The deputy sheriffs photographed the front door of the home, which contained a hole that could have been made by a bullet. A bullet was recovered from the victim's ankle at the hospital.
>
> Two witnesses standing outside across the street heard both the argument and a gunshot. Immediately thereafter, both saw someone run down the driveway in a hurried fashion, jump into the driver's side of a car, and drive away.
>
> Aunt admitted calling 911 after the victim returned from the hospital because she thought defendant's car was outside her home. Aunt admitted she was afraid because she thought defendant had shot her husband.

/ / /

---

[1]    Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

1          At trial, the victim stated that he did not recall most of the events.
           At trial, aunt admitted she had made up at least three stories to tell the
2          deputy sheriffs in order to get defendant in trouble, although only one
           version implicated defendant.
3          No defense evidence was presented.

4     **B.    <u>Procedural History</u>**

5          Petitioner was convicted of assault with a deadly weapon, shooting at an inhabited

6   dwelling, and possession of a firearm by a felon.  The jury found that petitioner intentionally

7   discharged a firearm and that he inflicted great bodily injury upon the victim.  Petitioner was

8   sentenced to the mid-term of five years plus an enhancement of 25 years to life for discharging a

9   firearm and inflicting great bodily injury, for a total term of 30 years to life.  Petitioner was also

10  sentenced to two additional years, to run concurrently, for violating parole.

11         Petitioner's conviction and sentence were affirmed on direct appeal by the

12  California Court of Appeal and he did not seek direct review by the California Supreme Court.

13  Petitioner filed a habeas corpus action in the Sacramento County Superior Court, which was

14  denied.  Both the California Court of Appeal and California Supreme Court denied habeas relief

15  without comment or citation.  Respondent concedes that petitioner's federal claims are

16  exhausted.

17

18                              **II.  STANDARDS OF REVIEW**

19         Because this action was filed after April 26, 1996, the provisions of the

20  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively

21  applicable.  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Calderon v. United States Dist. Ct.</u>

22  <u>(Beeler)</u>, 128 F.3d 1283, 1287 (9th Cir. 1997), <u>cert.</u> <u>denied</u>, 522 U.S. 1099 (1998).  The AEDPA

23  does not, however, apply in all circumstances.  When it is clear that a state court has <u>not</u> reached

24  the merits of a petitioner's claim, because it was not raised in state court or because the court

25  denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal

26  habeas court must review the claim de novo.  <u>See</u> <u>Pirtle v. Morgan</u>, 313 F.3d 1160 (9th Cir.

                                          3

2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).  Thus, under § 2254(d), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law.  Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision.  See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006).  "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, ___ F.3d ___ (9th Cir. Sept. 15, 2008) (citing Wright v. Van Patten, 128 S.Ct. 743, 746 (2008)).  For federal law to be clearly

1   established, the Supreme Court must provide a "categorical answer" to the question before the

2   state court.  See id.; see also Carey, 127 S.Ct at 654 (holding that a state court's decision that a

3   defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an

4   unreasonable application of, the Supreme Court's test for determining prejudice created by state

5   conduct at trial because the Court had never applied the test to spectators' conduct).  Circuit

6   court precedent may not be used to fill open questions in the Supreme Court's holdings.  See

7   Carey, 127 S.Ct. at 653.

8          In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

9   majority of the Court), the United States Supreme Court explained these different standards.  A

10  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

11  the Supreme Court on the same question of law, or if the state court decides the case differently

12  than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

13  court decision is also "contrary to" established law if it applies a rule which contradicts the

14  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

15  that Supreme Court precedent requires a contrary outcome because the state court applied the

16  wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

17  Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

18  id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

19  determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040,

20  1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

21  case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

22  is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

23         State court decisions are reviewed under the far more deferential "unreasonable

24  application of" standard where it identifies the correct legal rule from Supreme Court cases, but

25  unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith,

26  123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams,

5

1    suggested that federal habeas relief may be available under this standard where the state court

2    either unreasonably extends a legal principle to a new context where it should not apply, or

3    unreasonably refuses to extend that principle to a new context where it should apply.  See

4    Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

5    decision is not an "unreasonable application of" controlling law simply because it is an erroneous

6    or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 123 S.Ct.

7    1166, 1175 (2003).  An "unreasonable application of" controlling law cannot necessarily be

8    found even where the federal habeas court concludes that the state court decision is clearly

9    erroneous.  See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear error fails to

10    give proper deference to state courts by conflating error (even clear error) with

11    unreasonableness."  Id.  As with state court decisions which are "contrary to" established federal

12    law, where a state court decision is an "unreasonable application of" controlling law, federal

13    habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn,

14    283 F.3d at 1052 n.6.

15          The "unreasonable application of" standard also applies where the state court

16    denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d

17    848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions

18    are considered adjudications on the merits and are, therefore, entitled to deference under the

19    AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.

20    The federal habeas court assumes that state court applied the correct law and analyzes whether

21    the state court's summary denial was based on an objectively unreasonable application of that

22    law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

23    / / /

24    / / /

25    / / /

26    / / /

## III. DISCUSSION

Petitioner claims:  (1) the trial court misinstructed the jury regarding the believability of witness testimony; (2) the trial court misinstructed the jury regarding malice; (3) the trial court erred by failing to instruct the jury on the lesser charge of discharging a firearm in a grossly negligent manner; and (4) trial and appellate counsel were ineffective.

### A.    Jury Instruction Claims

Petitioner raises three claims relating to jury instructions.  In his first claim, he asserts that the trial court erred by instructing the jury regarding witness believability under CALJIC 2.21.2.  In his second claim, he argues that the trial court erred by instructing the jury regarding malice under CALJIC 1.22.  In his third claim, petitioner contends that the trial court erred by failing to sua sponte give an instruction on a lesser-included offense.

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the interpretation or application of state law.  See Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).  Thus, a challenge to jury instructions does not generally give rise to a federal constitutional claim.  See Middleton, 768 F.2d at 1085) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete

1    miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396

2    F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

3            In general, to warrant federal habeas relief, a challenged jury instruction "cannot

4    be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due

5    process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317

6    (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail, petitioner

7    must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting

8    conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp,

9    414 U.S. at 147).  In making its determination, this court must evaluate an allegedly ambiguous

10   jury instruction "'in the context of the overall charge to the jury as a component of the entire trial

11   process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.

12   1984)).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire

13   'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a

14   way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494

15   U.S. 370, 380 (1990)).  Petitioner's burden is "especially heavy" when the court fails to give an

16   instruction. Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  Where an instruction is missing a

17   necessary element completely, the "reasonable likelihood" standard does not apply and the court

18   may not ". . . assume that the jurors inferred the missing element from their general experience or

19   from other instructions. . . ." See Wade v. Calderon, 29 F.3d 1312, 1321 (9th Cir. 1994).  In the

20   case of an instruction which omits a necessary element, constitutional error has occurred. See id.

21           It is well-established that the burden is on the prosecution to prove each and every

22   element of the crime charged beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364

23   (1970).  Therefore, due process is violated by jury instructions which use mandatory

24   presumptions to relieve the prosecution's burden of proof on any element of the crime charged.

25   See Francis v. Franklin, 471 U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510

26   (1979).  A mandatory presumption is one that instructs the jury that it must infer the presumed

8

1  fact if certain predicate facts are proved.  See Francis, 471 U.S. at 314.  On the other hand, a

2  permissive presumption allows, but does not require, the trier of fact to infer an elemental fact

3  from proof of a basic fact.  See County Court of Ulster County v. Allen, 442 U.S. 140, 157

4  (1979).  The ultimate test of the constitutionality of any presumption remains constant –  the

5  instruction must not undermine the factfinder's responsibility at trial, based on evidence adduced

6  by the government, to find the ultimate facts beyond a reasonable doubt.  See id. at 156 (citing In

7  re Winship, 397 U.S. at 364).

8              1.      CALJIC 2.21.2

9              Petitioner claims that CALJIC 2.21.2, which discussed witness believability,

10  impermissibly altered the burden of proof.  This claim was raised for the first time in petitioner's

11  habeas petition to the Sacramento County Superior Court, which denied relief because the claim

12  could have been raised on direct appeal.  Specifically, the court stated:  "Since the substantive

13  instructional error claim could have been raised on appeal, it is barred from consideration on

14  habeas corpus."  The state courts did not otherwise address the claim.  Because the claim was

15  denied on procedural grounds, respondent now argues that the claim is procedurally barred.  The

16  court agrees.

17              Based on concerns of comity and federalism, federal courts will not review a

18  habeas petitioner's claims if the state court decision denying relief relies on a state law ground

19  that is independent of federal law and adequate to support the judgment.  See Coleman v.

20  Thompson, 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989).  However, a

21  discretionary state rule is not adequate to bar federal habeas corpus review.  See Siripongs v.

22  Calderon, 35 F.3d 1308 (9th Cir. 1994).  Generally, the only state law grounds meeting these

23  requirements are state procedural rules.  Even if there is an independent and adequate state

24  ground for the decision, the federal court may still consider the claim if the petitioner can

25  demonstrate:  (1) cause for the default and actual prejudice resulting from the alleged violation of

26  federal law, or (2) a fundamental miscarriage of justice.  See Harris, 489 U.S. at 262 (citing

9

1   Murray v. Carrier, 477 U.S. 478, 485, 495 (1986)).

2        A state law is independent if it is not interwoven with federal law.  See Michigan

3   v. Long, 463 U.S. 1032, 1040-41 (1983).  The independence of a state law is measured at the

4   time the default is imposed by the state court to bar a claim.  See Bennett v. Mueller, 322 F.3d

5   573, 582 (9th Cir. 2003); see also La Crosse v. Kernan, 244 F.3d 702, 204 (9th Cir. 2001); Park

6   v. California, 202 F.3d 1146 (9th Cir. 2000) (assessing whether California's waiver default was

7   independent when the California Supreme Court denied the claim).  A state law is adequate if it

8   is clear, well-established, and consistently applied.  See Bargas v. Burns, 179 F.3d 1207, 1211

9   (9th Cir. 1999).  The adequacy of a state default is measured at the time of the petitioner's

10   purported default.  See Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997).  Thus, the

11   respective dates for determining the adequacy and independence may not be the same.

12        The government bears the ultimate burden of establishing adequacy.  See Bennett,

13   322 F.3d at 581.  However, because the petitioner bears the initial burden of putting a procedural

14   bar affirmative defense in issue in the case (by asserting specific factual allegations as to

15   inadequacy, for example), the scope of the state's burden of proof is measured by the specific

16   assertions put forth by petitioner.  See id. at 586.  The petitioner's burden is de minimus.  See

17   King v. Lamarque, 464 F.3d 963, 967 (9th Cir. 2006); see also See Webb v. Kernan, 2008 WL

18   564965 (E.D. Cal. 2008).

19        When the state court discusses a procedural default but also reaches the merits of

20   a claim, a denial of the claim cannot be said to have relied on the procedural default.  See

21   Thomas v. Hubbard, 273 F.3d 1164, 1176 (9th Cir. 2001) (citing Harris, 489 U.S. at 263); see

22   also Panther v. Hames, 991 F.2d 576, 580 (9th Cir. 1993).  As the Ninth Circuit observed in

23   Panther, ". . . because the Alaska Court of Appeals considered Panther's claim on the merits . . .

24   so can we." 991 F.2d at 580.  In Thomas, the state court discussed the issue of procedural default

25   but then went on to deny the claim because any error was harmless.  See 273 F.3d at 1176.  The

26   Ninth Circuit held:  "In doing so, the [state] court left the resolution of the procedural default

1    issue uncertain rather than making a clear and express statement that its decision was based on a

2    procedural default." Id. Therefore, where the state court discusses both procedural default and

3    the merits, and does not expressly hold that the procedural default is the basis of the denial, the

4    procedural default does not operate to bar federal review.

5           Under California law, a convicted defendant desiring to bring claims in a state

6    habeas petition must, if possible, have pursued the claims on direct appeal. See Park v.

7    California, 202 F.3d 1146, 1151 (9th Cir. 2000) (citing In re Dixon, 41 Cal.2d 756 (1953)). The

8    so-called Dixon rule requiring that claims be raised on direct appeal is discretionary in that it

9    admits of the possibility of exceptions for "special circumstances constituting an excuse" for

10   failure to raise a claim by way of direct appeal and when such circumstances are found, the

11   California Supreme Court may entertain the claim. see Park, 202 F.3d at 1152 (citing Fields v.

12   Calderon, 125 F.3d 757, 763(9th Cir. 1997)); see also Karis v. Vasquez, 828 F. Supp. 1449,

13   1462-63 (1993). One of the exceptions to the Dixon rule is for fundamental constitutional error.

14   See Park, 202 F.3d at 1152 (citing In re Harris, 5 Cal. 4th 813 (1993)). Before the California

15   Supreme Court decided Robbins in 1998, attempting to disentangle certain of California's

16   procedural rules from federal constitutional concepts, the applicability of this exception

17   depended, at least in part, on federal constitutional principles. See Park, 202 F.3d at 1152.

18   Therefore, Dixon defaults imposed before 1998 are not independent of federal law and cannot

19   bar federal habeas review. See id. at 1153. As to adequacy, the Ninth Circuit has held that the

20   Dixon bar was not firmly established and consistently applied prior to the Clark decision in 1993.

21   See Fields, 125 F.3d at 765.

22           In this case, the procedural default at issue – petitioner's failure to raise his claim

23   regarding CALJIC 2.21.2 on direct appeal – was imposed after the 1998 Robbins decision and

24   occurred after the 1993 Clark decision. Therefore, it is both adequate and independent in this

25   case and the claim is barred from federal review. Petitioner has not demonstrated cause or

26   prejudice to excuse the procedural default.

1        In any event, the claim lacks merit.  CALJIC 2.21.2 states:

2             A witness who is willfully false in one material part of his or her
testimony is to be distrusted in others.  You may reject the whole

3             testimony of a witness who willfully has testified falsely as to a material
point, unless, from all the evidence, you believe the probability of truth

4             favors his or her testimony in other particulars.

5 As respondent notes, both the California Supreme Court and Ninth Circuit Court of Appeals have

6 held that CALJIC 2.21.2, does not impermissibly alter the burden of proof as to any particular

7 charged offense.  See People v. Cleveland, 32 Cal.4th 704 (2004); see also Turner v. Calderon,

8 281 F.3d 851 (9th Cir. 2002).  Therefore, this court cannot say that the state court's denial of this

9 claim was either contrary to or an unreasonable application of clearly established law.

10                     2.    CALJIC 1.22

11        Petitioner's claim of instructional error regarding CALJIC 2.21.2 was raised for

12 the first time in his habeas petition filed in the California Supreme Court.  Because the state court

13 denied the claim without comment or citation, this court must assume that the state court applied

14 the correct clearly established law and then conduct an independent review to determine whether

15 the state court's denial of the claim was an objectively unreasonable application of that law.

16        The trial court instructed the jury under CALJIC 1.22 as follows:

17             The terms "maliciously" and "malicious" mean[] a wish to vex,
annoy, or injure another person or an intent to do a wrongful act.

18

19 Petitioner argues that this instruction improperly altered the elements of the crime of discharging

20 a firearm at an inhabited dwelling, which requires malicious conduct, to require a mere intent to

21 do a wrongful act.  As with CALJIC 2.21.2 discussed above, the state courts have rejected this

22 argument.  In People v. Wade, the California Court of Appeal explained that CALJIC 1.22

23 properly sets forth the "malice" element of shooting at an inhabited dwelling.  See 100

24 Cal.App.4th 866, 79-80 (2002).  Petitioner's claim rests on the incorrect premise that "malice"

25 and intent to do a wrongful act are not the same thing under California law.  The state court's

26 denial of this claim was not objectively unreasonable.

3.    Lesser-Included Offense Instruction

Under <u>Beck v. Alabama</u>, 447 U.S. 625, 638 (1980), it is well-settled that, in capital cases, failure to give a lesser included offense instruction where the evidence supports the instruction results in constitutional error.  However, there is no such settled rule for non-capital cases.  <u>See</u> <u>Turner v. Marshall</u>, 63 F.3d 807, 819 (9th Cir. 1995), <u>overruled on other ground by</u> <u>Tolbert v. Page</u>, 182 F.3d 677 (9th Cir. 1999).  As the court in <u>Turner</u> observed, there is a circuit split on the question.  <u>See</u> <u>id.</u>  In the Ninth Circuit, the <u>Beck</u> rule does not apply in non-capital cases.  <u>See</u> <u>Bashor v. Risley</u>, 730 F.2d 1288, 1240 (9th Cir. 1984).  The Eleventh and Tenth Circuits agree.  <u>See</u> <u>Perry v. Smith</u>, 810 F.2d 1078, 1080 (11th Cir. 1987); <u>Trujillo v. Sullivan</u>, 815 F.2d 597, 602 (10th Cir. 1987).  The Seventh and First Circuits only apply <u>Beck</u> in non-capital cases to prevent a fundamental miscarriage of justice.  <u>See</u> <u>Tata v. Carver</u>, 917 F.2d 670, 672 (1st Cir. 1990); <u>Nichols v. Gagnon</u>, 710 F.2d 1267, 1272 (7th Cir. 1983).  The Third and Sixth Circuits, however, generally apply <u>Beck</u> in all non-capital cases.  <u>See</u> <u>Vujosevic v. Rafferty</u>, 844 F.2d 1023, 1027 (3rd Cir. 1988); <u>Ferrazza v. Mintzes</u>, 753 F.2d 967, 968 (6th Cir. 1984).  The Supreme Court has not addressed the applicability of <u>Beck</u> in non-capital cases.  Because there is no clearly established Supreme Court precedent applying the <u>Beck</u> lesser included offense rule in non-capital cases, and because creating such a rule in this case would violate the non-retroactivity principles of <u>Teague v. Lane</u>, 489 U.S. 288 (1989), this court is bound to follow Ninth Circuit precedent.  Therefore, federal habeas relief is not available on this claim in non-capital cases.  <u>See</u> <u>Turner</u>, 182 F.3d at 819.

**B.    Ineffective Assistance of Counsel**

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  <u>See id.</u> at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to

13

1   have been the result of reasonable professional judgment.  See id. at 690.  The federal court must

2   then determine whether, in light of all the circumstances, the identified acts or omissions were

3   outside the wide range of professional competent assistance.  See id.  In making this

4   determination, however, there is a strong presumption "that counsel's conduct was within the

5   wide range of reasonable assistance, and that he exercised acceptable professional judgment in all

6   significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

7   Strickland, 466 U.S. at 689).

8          Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S.

9   at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

10  unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

11  reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;

12  see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

13  determine whether counsel's performance was deficient before examining the prejudice suffered

14  by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

15  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

16  followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

17  697).

18         The Strickland standards also apply to appellate counsel. See Smith v. Robbins,

19  528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882

20  F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional

21  right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel,

22  as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463

23  U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.

24  Otherwise, the ability of counsel to present the client's case in accord with counsel's professional

25  evaluation would be "seriously undermined."  Id.; see also Smith v. Stewart, 140 F.3d 1263, 1274

26  n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary,

14

1  and is not even particularly good appellate advocacy.")  Further, there is, of course, no obligation

2  to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88.  Thus,

3  counsel is not deficient for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to

4  demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors,

5  he probably would have prevailed on appeal.  See id. at n.9.

6           Petitioner asserts that trial counsel was ineffective for failing to object to CALJIC

7  2.21.2 at time of trial.  This argument was addressed by the Sacramento County Superior Court in

8  petitioner's state habeas case, which issued the last reasoned decision on the claim.  Regarding

9  trial counsel the state court concluded as follows:

10              Petitioner claims that trial counsel was ineffective for failing to
             raise the claimed error in CALJIC No. 2.21.2 at the time of trial.
11           Specifically, he claims that the instruction lightens the prosecutor's burden
             of proof.  However, the instruction is a correct statement of the law and the
12           claim that it impermissibly alters the burden of proof beyond reasonable
             doubt was expressly rejected in [People v. Reyes, 195 Cal.App.3d 957, 966
13           (1987)].  Therefore, Petitioner has failed to show that counsel's failure to
             raise the issue was either unreasonable or that but for the failure, the result
14           likely would have been different.

15  As to appellate counsel, petitioner argues in his federal petition that appellate counsel was

16  ineffective for failing to argue that the trial court erred in instructing the jury under CALJIC 1.22

17  and by failing to sua sponte give an instruction on a lesser-included offense.   This claim was

18  raised for the first time in petitioner's habeas petition to the California Supreme Court, which

19  denied relief without comment or citation.

20           For the reasons discussed above, the court concludes that counsel did not render

21  deficient performance and, even if they did, no prejudice resulted because the outcome would

22  have been the same.  Specifically, petitioner's claims regarding CALJIC 2.21.2, CALJIC 1.22,

23  and a sua sponte lesser-included offense instruction are meritless and, therefore, counsel were not

24  ineffective for failing to raise them.

25  / / /

26  / / /

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus (Doc. 1) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED: January 2, 2009


_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

16